E. Barney Gesas (1179)
THE LAW OFFICE OF E. BARNEY GESAS PLLC
125 N. T Street, No. 1
Salt Lake City, Utah 84103
Telephone: 801.537.4772
*ebgesas@gesaslaw.com*
Attorneys for Anson Calder, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANSON CALDER, LLC<br><br>Plaintiff<br><br>v.<br><br>BAY SHORE MOVING & STORAGE, INC.; GODFREY TRUCKING, INC.; YORK RISK SERVICES GROUP, INC. and JOHN/JANE DOES INSURANCE COMPANIES AND AGENTS,<br><br>Defendants. | MOTION FOR LEAVE TO CONDUCT LIMITED JURISDICTIONAL DISCOVERY OR IN THE ALTERNATIVE STAY<br><br>Case No. 2:18-cv-00571<br><br>Judge Dale Kimball<br><br>Magistrate Judge Paul M. Warner<br><br>**(Oral Argument Requested)** |

Pursuant to DUCivR 7-1(a) and the inherent discretionary powers of this Court the Plaintiff, Anson Calder, LLC (**AC**), moves and requests this Court grant it leave to conduct limited written discovery on the in personam jurisdictional issues raised by the Defendant Bay Shore Moving & Storage, Inc. (**Bay Shore**) in their Motion to Dismiss Complaint (**Motion**) (Doc. 41), pending before this Court. The Motion is presently scheduled for oral argument on Wednesday, March 13, 2019, at 3:00 P.M. (Doc. 48). In the alternative AC seeks to stay the Court's ruling upon the Motion until AC is granted leave to engage in limited jurisdictional document and written discovery relevant to this Court's determination of the merits of the Motion.

## SPECIFIC RELIEF SOUGHT BY THIS MOTION

AC specifically requests this Court grant it leave to engage in the following limited, written discovery from Bay Shore and Defendant Godfrey Trucking, Inc. (**Godfrey**) as part of the Court's review and deliberations of the Motion. Specifically, AC seeks discovery of the following to be documents to be requested and limited interrogatories to be propounded to Bay Shore and Godfrey:

1. Those documents, including electronically stored information, Bay Shore and Godfrey have in their possession, custody or control that arise out of and relate to its Bay Shore's 2017 contract for storage and transportation of AC's identified inventory and goods set forth in the "Straight Bill of Lading", attached to this motion as **Exhibit A**.

2. Those documents, including electronically stored information, Bay Shore and Godfrey have in their possession, custody or control that arise out of and relate to Godfrey's 2017 contract for transportation of AC's identified inventory and goods from Hauppauge, New York to Las Vegas, Nevada, attached to this motion as **Exhibit B**.

3. All written documents and electronically stored information regarding any and all communications by and between Bay Shore and Godfrey arising out of and relating to their communications, documentation and any other specific written materials referring to the transfer and loading of AC's business property, display cases and other items stored by it in Bay Shore's storage facilities, located in Hauppauge, New York and thereafter loaded onto Godfrey's semi-truck trailer for transportation from Hauppauge, New York to Las Vegas, Nevada.

4. Any and all documents relating to Bay Shore's business relationships at any time by and between Godfrey related to transportation of AC's goods from New York or otherwise by and through Godfrey to Las Vegas, Nevada.

## PROCEDURAL AND FACTUAL BACKGROUND

AC filed a Second Amended Complaint (**Complaint**) on October 18, 2018. (Doc. 36). Bay Shore filed a Motion to Dismiss the Complaint for lack of Jurisdiction on November 6, 2018. (Doc. 41). On November 8, 2018 Godfrey filed an Answer to the Complaint. (Doc. 42). On October 16, 2018 AC filed a Notice of Voluntary Dismissal of the Defendant York Risk Services Group, Inc. (**York**) without prejudice. (Doc. 20). On December 14, 2018 AC filed a Memorandum in Opposition to Bay Shore's Motion to Dismiss together with a supporting Declaration of Curtis Calder (CEO of AC) and supporting exhibits. (Docs. 41-1 and 41-2).

On November 5, 2018 the Magistrate Judge Paul M. Warner entered an Order to Propose Schedule. (Doc. 40). As a result of Bay Shore's Motion to Dismiss the Complaint, there has been no Order submitted by AC of a proposed schedule to and with the Defendants in the form of a draft Attorney Planning Meeting Report since the Motion has effectively stayed all other proceedings in this action until there is a ruling on it by the Court.

The Complaint alleges with particularity Bay Shore transported AC's property from New York City, New York to Hauppauge, New York on or about May 4, 2017. (Doc 36-1 at 2). Bay Shore stored AC's property at its Hauppauge, New York storage facility until May 8, 2017 at which time Godfrey took possession of AC's stored items. (Doc. 36-1 at 6). Under a Uniform Straight Bill of Lading Bay Shore is listed as "shipper" while Godfrey is identified as the interstate carrier, with Las Vegas, Nevada listed as the intended destination. (*Id.*; see also Doc. 36 at 3, para. 12). AC alleges Bay Shore damaged the shipped goods at the time of packing and loading its itemized inventory from New York, New York and thereafter including interlining with Godfrey in the transportation of AC's goods to Las Vegas, Nevada. Bay Shore asserts for purposes of its motion that it has no contacts or required nexus to the State of Utah under the

Utah Long Arm Statute or any other applicable law in facts pled in the Complaint to allow this Court to assert *in personam* jurisdiction. Godfrey does not dispute jurisdiction and venue in this action. (Doc. 42 at 2, para. 4).

AC does not dispute that Bay Shore does not have minimum contacts in a traditional jurisdictional analysis, however, AC does assert under the applicable case law to be cited here there is a "plausible and justifiable" basis because of the allegations pled in detail in the Complaint together with the supporting **Declaration No. 2** of Curtis Calder filed concurrently with this motion , there is a factual basis for this Court to deny the Motion. Alternatively, to stay it and allow AC limited jurisdictional factual discovery to not take more than 60 days from the date the Court considers and grants AC's motion. Also, under applicable federal case law involving the intrastate and interstate motor carrier transportation of goods, there is a legal and plausible basis for personal jurisdiction over Bay Shore that should be fairly considered by this Court. Finally, there is not actual or apparent prejudice to Bay Shore for the Court to grant this motion since it is timely filed in good faith.

## LEGAL ARGUMENT

### I. This Court is Vested with Broad Discretion in Considering AC's Motion for Leave to Engage in Limited Jurisdictional Discovery.

It is not disputed here by AC this Court has broad discretion in considering AC's Motion for Leave to engage in limited jurisdiction discovery in this action. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318, F.3d 446, 456 (3rd Cir.2003). At the same time, it is reasonable that where AC can present a "plausible jurisdictional theory" it should be granted jurisdictional discovery under certain facts and applicable law. The United States District Court for Delaware in *Round Rock Research LLC v. ASUSTeK Computer Inc., et al.*, 967, F.Supp. 2d 969, 973 (2013) stated:

> "What are the procedural principles relevant to consideration of a motion to dismiss for lack of personal jurisdiction? The plaintiff bears the burden of showing personal jurisdiction. "[I]n reviewing a motion to dismiss under Rule 12(b)(2), [the court] must accept all of the plaintiff's alleged allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir.2002) (internal quotation omitted). "[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan* 954 F.2d 141, 146 (3d Cir.1992). Thus, when the plaintiff has a plausible jurisdictional theory, but insufficient evidence to prove the theory, the plaintiff should be granted jurisdictional discovery. *Round Rock Research LLC v. ASUSTeK Computer Inc.*, 967 F.Supp.2d 969, 973 (2013).
>
> Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is "clearly frivolous." If a plaintiff presents factual allegations that suggest "with reasonable particularity" the possible existence of the requisite "contacts between [the party] and the forum state," the plaintiff's right to conduct jurisdictional discovery should be sustained."

*Toys "R" Us, Inc.* at 456.

## II. Under the Carmack Amendment, 49 U.S.C. § 14706(d)(1)-(2), Jurisdiction Under the Facts and Circumstances of this Action Provides for Personal Jurisdiction Over Bay Shore.

Based on the well pled facts in the Complaint and the Second Declaration of Curtis Calder there exists a justifiable basis for the Court to consider and grant AC's motion.

> "In *Project Hope v. M/V IBN SINA*, the Second Circuit recently dealt with a case where a shipment was to be transported from Winchester, Virginia to Norfolk, Virginia by an overland transporter, and to Norfolk to Cairo, Egypt by an oceangoing transporter. 250 F.3d 67, 75 (2d Cir.2001). Unfortunately, the shipment was damaged during the Virginia segment of travel.

In holding these facts triggered § 13501(1)(E), the Second Circuit applied a number of principles. Where multiple carriers are responsible for different legs of a generally continuous shipment, courts must look to the shipment's final destination as intended at the time the shipment commenced. *Id.* at 75. This is true even when the domestic portion of travel falls solely within a single state. *Id.* In such a case, the Carmack Amendment applies throughout the shipment, even to a carrier that is responsible for only an intrastate leg. *Id.* (citing *Merchants Fast Motor Lines, Inc. v. I.C.C.*, 528 F.2d 1042, 1044 (5th Cir.1976) Notably, the Second Circuit did not think it was of consequence that the overland transporter had issued a straight bill of lading. It was enough that the shipment was intended from the outset to travel between a place in the United States and a place in a foreign country.

The facts of this case are analogous. Because the thruster was intended from the outset to be delivered from England to LaRose, Louisiana, it falls within the ambit of § 13501(1)(E). Thus, fact that Venture issued a straight bill of lading for its portion of the journey is not dispositive. *See Merchants Fast Motor Lines, Inc. v. I.C.C.*, 528 F.2d 1042, 1044 (5th Cir.1976) (holding that in determining the reach of the ICC's jurisdiction, it mattered not whether a carrier's routes were wholly within one state; the determinative factor was whether the transported goods either (1) originated in transit from, or (2) were ultimately bound for destination outside of Texas); *State of Texas v. United States*, 866 F.2d 1546, 1556 (5th Cir.1989) (noting that in adjudicating any question of whether a shipment qualifies as "interstate commerce" courts must look to the "essential character" of the shipment; of particular relevance is the shipper's fixed and persisting intent at the time of the shipment). As such the Court holds that the Carmack Amendment is applicable in this case."

The Tenth Circuit has considered the Carmack Amendment to effectively trump forum selection disputes involving intrastate and interstate motor carrier transportation. *See, Aluminum Products Distributors v. Aaacon Auto Trans.*, 549 F.2d 1381 (10th Cir.1997).

### III.   The Legal Distinctions Of and Between Intrastate and Interstate Motor Carriers Interlining are Critical to AC's Motion

For the Court to consider AC's motion for limited jurisdictional discovery concurrently with consideration of Bay Shore's Motion it is critical to consider Bay Shore and Godfrey's

interlining the transportation of AC's inventory and commercial property from New York to Las Vegas, Nevada. In *Alaska Freight Lines, Inc. v. The United States,* 377 F.2d 580, 585 (1967) the Federal Circuit Court addressed the distinctions between intrastate and interstate motor carrier interlining doctrines.

In *Alaska* the Circuit Court stated:

> "...By accepting plaintiff's trucks and trailers at Seward for transfer to flatcars the Railroad, an intrastate carrier, subjected itself to the plaintiff's arrangement for the continuous carriage of an interstate shipment. *Cincinnati, N.O. & Tex. Pac. Railway v. Interstate Commerce Comm.,* 162 U.S. 184, 16 S.Ct. 700, 40 L.Ed. 935 (1896). * * * the nature of the shipment * * * is determined by the essential character of the commerce. * * * It is not affected by the fact that the transaction is initiated or completed under a local bill of lading which is wholly intrastate, * * * *United States v. Erie R.R.,* 280 U.S. 98, 101, 102, 50 S.Ct. 51, 53, 74 L.Ed. 187 (1929). Cf. *Baer Bros. Mercantile Co. v. Denver & R.G.R.R.,* 233 U.S. 479, 34 S.Ct. 641, 58 L.Ed. 1055 (1914); *Texas & N.O.R.R. v. Sabine Tram Co.,* 227 U.S. 111, 33, S.Ct. 229, 57 L.Ed. 442 (1913); *Railroad Comm. of Louisiana v. Texas & Pac. Ry.,* 229 U.S. 336, 33 S.Ct. 837, 57 L.Ed. 1215 (1913)."

It is respectfully submitted the analysis of the *Alaska* Court is applicable here. Also, it is commonly recognized in the freight interline system in the United States of relations between trucking companies when freight and cargo moves and travels from one carrier to another, it is a well-established practice known as "interlining." Visit *Wikipedia - Freight Interline Systems.* (Free online encyclopedia).

## CONCLUSION

It is respectfully submitted that the Court grant AC's Motion for Leave to Conduct Limited Jurisdictional Discovery or in the alternative to stay its deliberations and ruling on the Motion until such discovery is concluded within 60 days.

## REQUEST FOR ORAL ARGUMENT

AC respectfully requests oral argument be heard on this motion be heard by the Court concurrently with its consideration of the Motion.

DATED this 26th day of February 2019.

                                             /s/ *E. Barney Gesas*
                                             E. Barney Gesas
                                             *Attorney for Anson Calder, LLC*

# EXHIBIT A

## ADVICE OF COVERAGE
Shipper's Copy

**Name of Customer/Owner of Property:** ANSON CALDER

**Address:** WORLD TRADE CENTER **City:** NEW YORK **State:** NY **Zip:**

**Name of Carrier/Warehouseman:** BAY SHORE MOVING AND STORAGE INC

**Address:** ONE CORPORATE DRIVE **City:** HAUPPAUGE **State:** NY **Zip:** 11788

Obligation assumed only as indicated by an X: (check one)

☒ **PROPERTY IN TRANSIT FROM** (City/State): NEW YORK **TO** (City/State): HAUPPAUGE
**DATE MOVING ON OR ABOUT:** 5/4/2017

☒ **PROPERTY IN STORAGE AT:** BAY SHORE MOVING AND STORAGE INC (Including delivery within 50-mile radius)
**EFFECTIVE FROM:** 5/5/2017 **UNTIL:** TBD ( 5/20/17) UNTIL P/U BY GODFREY

**DECLARED VALUE** $ 200000 FVP (This amount is Customer's/Owner's written declaration of the value.) The Carrier's/Warehouseman's maximum liability will not exceed the declared value or $200,000, whichever is less.

**VALUATION.** Valuation shall be based on the clause below marked by ☒. (check one)
**ACTUAL CASH VALUE**

☒ If the valuation stated above is "Actual Cash Value" the Carrier/Warehouseman shall not be liable beyond the actual cash value of the property at the time and place of loss or damage. Such loss or damage shall be ascertained or estimated according to such actual cash value (which includes proper deduction for depreciation) and shall in no event exceed what it would then cost to repair the same with material of like kind and quality.

**REPLACEMENT COST**

☐ If the value stated above is "Replacement Cost" the Carrier/Warehouseman shall not be liable beyond the full cost to repair or replace the property (without deduction for depreciation), subject to the property actually having been repaired or replaced by the Customer/Owner in a reasonable period of time following the loss. The payment shall not exceed, however, the amount actually spent to repair or replace the property for the same use. If not repaired or replaced, the property will be valued at its actual cash value on the date of loss or damage.

**Customer/Owner Deductible** (if applicable): $ 1500

In consideration of the charge stated on the warehouse receipt or the bill of lading the Carrier/Warehouseman has, as provided under the terms of its tariff, agreed to assume liability for loss or damage to the goods transported or stored for the Customer/Owner indicated above. This assumption is subject to the following provisions, stipulations and limitations, *and is subject to the terms and conditions of the Carrier Warehouseman's household goods movers insurance policy*.

**COINSURANCE:** THE CARRIER/WAREHOUSEMAN SHALL NOT BE LIABLE FOR AN AMOUNT MORE THAN THE DECLARED VALUE BEARS TO 100% OF THE VALUE (EITHER ACTUAL CASH VALUE OR REPLACEMENT COST AS SELECTED ABOVE) OF THE PROPERTY AT THE TIME OF LOSS OR DAMAGE.

**OBLIGATIONS ASSUMED**

The Carrier/Warehouseman assumes obligation against all risks of direct physical damage of property covered from any external cause except as hereinafter excluded

1   **PROPERTY COVERED BY OBLIGATION**

This obligation covers personal property of Customers/Owners including but not limited to personal effects and personal property used or to be used in a dwelling as a part of the equipment or supply of such dwelling; furniture, fixtures, and/or equipment of stores, offices, museums, hospitals, and similar institutions, articles, including objects of art, displays and exhibits, which because of their unusual nature or value, require specialized handling and equipment usually employed in moving household goods accepted by the Carrier/Warehouseman for transportation, repositioning, packing or storage which has been declared in a bill of lading or warehouse receipt. However, this obligation does not extend to:

A.  Papers of any kind including, but not limited to, accounts, bills, evidences of debt, letters of credit, passports, deeds, money, notes, securities, philatelic property, drafts, stocks, bonds, tickets, mechanical drawings, blueprints or similar documents
B.  Items of extraordinary value including, but not limited to, precious metals or stones (or articles manufactured from them), jewelry, watches, or numismatic properties
C.  Furs or garments trimmed with fur accepted for specific fur storage.
D.  Items of sentimental or emotional value including, but not limited to, photographs, family albums, newspaper clippings and heirlooms having little or no market value.
E.  Live animals, birds, reptiles, eggs, fish, plants or flowers, or other property of a perishable nature.

2   **EXCLUSIONS AND LIMITATIONS - NO OBLIGATION IS ASSUMED FOR:**

A.  Damage sustained during any cleaning, repairing, restoration or retouching process, unless caused by fire, in which event liability shall be limited to the loss or damage caused by fire;
B.  Spoilage or contents of deep freezers, however caused;
C.  Loss or damage caused by breakage of china, glassware, statuary, bric-a-brac or similar articles of a brittle nature, unless such property is packed by the Carrier/Warehouseman or its duly authorized agent or unless such loss or damage is directly caused by fire, collision, overturn, tornado, cyclone, windstorm or flood;
D.  Loss, damage or expense directly or indirectly caused by, resulting from, contributed to or made worse by Earthquake. Nor does the Carrier/Warehouseman assume liability for loss, damage or expense directly or indirectly caused by, resulting from, contributed to or made worse by Earthquake. The loss or damage, whether or not dominant, is not assumed even if a covered cause of loss contributes concurrently or in any sequence to the loss or damage;
This exclusion shall not apply to loss or damage caused by or resulting from fire, explosion, smoke or theft which result from Earthquake.

Signed by _____ Customer   Signed by __IRFAN NAEEM__ Warehouseman
Date Signed _____   Date Signed 5/4/2017

10-0004 11-95

E. An act, omission, order or default of the Customer/Owner.
F. Defect or inherent vice of the article, including susceptibility to damage because of atmospheric conditions such as temperature and humidity or changes therein.
G. Strikes, lockouts, labor disturbances, riots, civil commotions, or the acts of any person or persons taking part in any such occurrence or disorder.
H. Delay, loss of market or use, interruption of business, or any other consequential loss extending beyond the direct physical loss or damage.
I. Mechanical or electrical derangement of television sets, radios, refrigerators, deep freezers, washing machines, dryers, sound recording or playing equipment and parts thereof, personal computers, electronic or mechanical games, or like articles, unless evidenced by external damage to such items.
J. Any written, verbal or oral assumption of liability over and above that liability so stated in the named Insured's warehouse receipt and storage contract, bill of lading, and Advice of Coverage.
K. Loss or damage occasioned by wear and tear, dampness of atmosphere, extremes of temperature, deterioration, moths, vermin, inherent vice or damage sustained due to any process or while actually being worked upon and resulting therefrom;
L. Any fraudulent or dishonest act(s) committed alone or in collusion with others by:
(1) any employee, officer, director, partner, trustee, or any other authorized representative of the Customer/Owner, whether or not such act(s) be committed during regular business hours.
(2) others to whom the property covered hereunder may be entrusted at the decision of the Customer/Owner (connecting Carriers/Warehousemen for hire excepted).
M. Losses due to nuclear radiation and war.

**TERRITORY**
This obligation applies while the property is at locations within or while in transit within and between the forty-eight (48) contiguous states of the United States of America, the District of Columbia or the Dominion of Canada.

**DEDUCTIBLE**
Each claim for loss or damage shall be adjusted separately and from the amount of each adjusted claim the sum shown shall be deducted.

## GENERAL CONDITIONS

**MACHINERY**
In case of loss or injury to any part of a machine consisting, when complete for sale or use of several parts the Liability of the Carrier/Warehouseman shall, in no event, exceed the value of the part lost or damaged.

**PARTIAL LOSS**
In case of loss of or injury to any part of a machine consisting, when complete for sale or use, of several parts, the Carrier/Warehouse man shall, only be liable for the value of the part lost or damaged.

**DEBRIS REMOVAL**
In case of loss of or damage to the property covered hereunder, expenses which may be incurred in the removal of all debris of such property which may be occasioned by loss covered under the terms of this agreement will be paid.

**SETTLEMENT OF CLAIMS**
All adjusted claims shall be paid or made good to the Customer/Owner within thirty (30) days after presentation and acceptance of satisfactory proof of interest and loss and any other requested documents to the office of the Carrier/Warehouseman or his agent. No loss shall be paid hereunder if the Customer/Owner has collected the same from others.

**APPRAISAL**
In the event of disagreement as to the amount of loss, the same shall be ascertained by two competent and disinterested appraisers, the Customer/Owner and the Carrier/Warehouseman selecting one, and the two so chosen shall first select a competent and disinterested appraisers. The appraisers together shall then estimate and appraise the losses, stating separately the sound value and damage, and failing to agree shall submit the differences to the umpire and the agreement in writing of any two shall determine the amount of such loss. The parties thereto shall pay the appraisers respectively selected by them and shall bear equally the expense of the appraisal and umpire.

**WAIVER OF CLAIM**
Any act or agreement of the Customer/Owner, whether before or after the occurrence of a loss, waiving or transferring, or tending to defeat or decrease any claim against any person or persons, carrier, vessel, town or other corporation, or any government, shall be a cancellation of the liability of the Carrier/Warehouseman for an account of the loss, damage, average or expense claimed, and all sums paid and incurred by the Carrier/Warehouseman on account of said loss, damage, average or expense, or for the recovery of the same, shall be a lien upon the property hereby covered and recoverable against the Customer/Owner.

**CANCELLATION**
This advice may be terminated at any time at the request of the Customer/Owner, or by the Carrier/Warehouseman giving thirty (30) days written notice of such termination.

**ASSIGNMENT**
The advice shall be void if assigned or transferred.

**AGENT**
No person shall be deemed an Agent of the Carrier/Warehouseman unless specifically authorized in writing by the Carrier/Warehouseman.

**PROTECTION OF PROPERTY**
In case of loss, it shall be lawful and necessary for the Customer/Owner, his or their factors, servants, and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the property covered hereunder, or any part thereof, without prejudice to this Advice of Coverage, nor shall the acts of the Customer/Owner or the Carrier/Warehouseman, in recovering, saving and preserving the property in case of loss be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the Customer/Owner and the Carrier/Warehouseman proportionately to the extent of their respective interests.

**MISREPRESENTATION AND FRAUD**
This obligation assumed by the Carrier/Warehouseman shall be voided if, whether before or after a loss, the Customer/Owner has concealed or misrepresented any material fact, or circumstances concerning this advice, the property declared, or their interest in the property.

**NOTICE AND PROOF OF LOSS**
The Customer/Owner shall as soon as practicable report in writing to the Carrier/Warehouseman, or its agent, every loss, damage or occurrence which may give cause to a claim under this Advice of Coverage and shall file with the Carrier/Warehouseman or its agent within three (3) months from date of delivery, a detailed sworn proof of loss. Failure of the Customer/Owner to report said loss or damage or to file sworn proof of loss shall invalidate any and all claims under this Advice of Coverage for such loss. If you cannot make contact with the moving company, your claim will be referred to the proper adjusting office if you write to:

ClaimGuard, Inc., 215 Shuman Blvd., Suite 400, Naperville, IL 60563

# Bay Shore Moving & Storage, Inc.

One Corporate Drive, Hauppauge, New York 11788
Phone: 631-231-1313   Fax: 631-231-1375
www.bayshoremoving.com

WE HAVE RECEIVED YOUR REPORT OF A CLAIM, AND REGRET THAT YOUR MOVE WITH US WAS NOT HANDLED TO YOUR SATISFACTION.

IN ORDER THAT WE MAY HANDLE AND PROCESS YOUR CLAIM PROPERLY, WE ASK THAT YOU COMPLETE THE ENCLOSED "STANDARD PROOF OF LOSS AND DAMAGE CLAIM FORM" AND RETURN IT TO OUR OFFICE PROMPTLY.

SINCE INCOMPLETE INFORMATION MAY DELAY HANDLING OF YOUR CLAIM, MAY WE SUGGEST THAT YOU MAKE CERTAIN THAT ALL INFORMATION, AS REQUIRED, IS COMPLETE.

PLEASE HAVE YOUR SIGNATURE NOTARIZED, AND UPON RECEIPT OF THE ENCLOSED FORM DULLY COMPLETED, NECESSARY INVESTIGATION OF YOUR CLAIM WILL BE UNDERTAKEN. PLEASE DO NOT REPAIR –OR– DESTROY ITEMS DAMAGED UNTIL AN INSPECTION IS MADE. THANK YOU FOR YOUR COOPERATION.

SINCERELY,

BAY SHORE STORAGE WAREHOUSE, INC.

Attachment



go new places.™

Atlas
Interstate Agent

## under Uniform Household Good Bill of Lading

| | |
|---|---|
| Anson Calder LLC | 949-413-5494 |
| **Name of Claimant** | **Phone No.** |
| 385 South End Ave Apt 7K New York, NY 10280 | |
| **Current Address** | |
| 185 Greenwich Street, New York, NY 10007 | |
| **Former Address** | |
| Godfrey Trucking | 5/5/17 | 5/12/17 |
| **Name of Carrier** | **Loading Date** | **Delivery Date** |
| 6173 West 2100 South West Valley City, UT 84128 | |
| **Address of Carrier** | |
| Yes | Bay Shore Facility One Corporate Drive Hauppauge, NY 11788 |
| **Was Shipment in Storage?** | **If Yes, Where.** |

### DETAILED STATEMENT OF LOSS OR DAMAGE

| INVENTORY NUMBER | DESCRIPTION OF ITEM NATURE OF CLAIM | ACQUIRED DATE | ORIGINAL COST | AMOUNT NOW CLAIMED |
|---|---|---|---|---|
| Multiple | Dents, scratches, and extensive damages to wooden surfaces and structures, see pictures. | 5/5/17 | $300,000 | $130,000 - $155,000 See attached email quote from Fetzer Woodworking, the original manufacturers. |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Any person who knowingly and with intent to defraud any insurance company, files a statement of claim containing any materially false information, conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, is a crime.

**STATE:** New York    **COUNTY** New York

I, __Curtis Calder__ certify that I am the true and lawful owner of the items listed above. The above claim is true and correct to the best of my knowledge. All claims for loss or damage incurred during transport or storage. No pertinent information was withheld and the above constitutes my entire claim against the Carrier. The actual cash value of my shipment was $ __$200,000__.

*Curtis Calder*
**Signature**

Subscribed and sworn to before me on the __20th__ day of __June__, 20__17__, by *Emily Sumsion*

**EXHIBIT B**

 

"Large Enough to Serve You • Small Enough to Care"
Business Since 1965

# NEW CUSTOMER REQUIREMENTS

Please fax the following information to 801-908-0767. Your account must be approved for credit before our driver can be dispatched.

**BROKER**

1. Completed Credit Application signed by President or Owner
2. Copy of Contract Authority
3. Copy of Surety Bond
4. Credit Card Information (upon request)

**SHIPPER, CONSIGNEE OR BILL TO**

1. Completed Credit Application signed by President or Owner
2. Credit Card Information (upon request)

Thank you,

Godfrey Trucking, Inc.

6173 West 2100 South • West Valley City, UT 84128 • (801) 972-0660 • 1-800-444-7669 • Fax (801) 908-0767

## AGREEMENT

Applicant hereby applies for an extension of credit on the payment of freight charges to Godfrey Trucking, Inc., (Carrier) and represents as follows:

1. That the person executing this application and Agreement is authorized to do so;
2. That the applicant is financially responsible, and all statements contained in this Application are true and correct;
3. That Godfrey Trucking, Inc., is hereby authorized to obtain any information it considers necessary from any credit-reporting source concerning applicant and applicant's credit history;
4. That payment of any extensions of credit will be made to Godfrey Trucking, inc. with thirty (30) days of receipt of invoice or freight bill;
5. That in the event of default, jurisdiction is the State of Utah, and applicant will pay all costs of collection, including attorney's fees equivalent to 40% of the amount due, interest at the rate of 18% per annum, and all court costs;
6. That the applicant will not offset any claims of any nature whatsoever, including claims for damage or loss, against freight bills due carrier;
7. That applicant will forthwith notify Carrier if applicant becomes insolvent or otherwise unable to meet its current obligations as they become due.
8. That to induce Carrier to grant credit, the party executing this Application in applicant's behalf personally guarantees all obligations of applicant.
9. All Airfreight shipments will be accepted without a hard copy bill of lading.

Dated the ____ day of _____, 20___   By: _____
                                                        Signature

_____         _____
         Company Name                                Print/Title

Personal and continuing GUARANTEE TO Godfrey Trucking, Inc:

In the consideration of the extension of credit to the above named purchaser, the undersigned, as guarantor hereby personally and individually guarantees to Godfrey Trucking, Inc. that the above named purchaser will fully and promptly perform its present and future obligations to Godfrey Trucking, Inc. In the event of default, the guarantor agrees to pay all balances due, as well as service charges, reasonable attorney's fees and costs incurred in due course of any collection action taken as outlined in the Credit Agreement above. That in the event of default, jurisdiction is the State of Utah.

This guarantee shall be enforceable without first resorting to, or exhausting any remedies against purchaser, or any other party. Notice of acceptance of this guarantee is waived as well as notice of default in the event that Purchaser fails to satisfy any indebtedness covered by this guarantee. This may be cancelled by the undersigned at any time of receipt of written notice by Certified US Mail addressed to Godfrey Trucking, Inc. at 6173 West 2100 South, West Valley City, UT 84128. Cancellation may I will result in immediate default of the Credit Agreement terms and all debts incurred prior to receipt of cancellation shall be due and payable in full prior to release of guaranty.

The undersigned authorizes Godfrey Trucking, Inc., or its Agents to secure a credit report and agree to the release of credit information. This authorization shall be continuing without expiration and a photocopy or fax copy shall be given the same effect as the original. The undersigned as [an] individual(s) hereby knowingly consent(s) to the use of any such credit report(s) consistent with the Federal Fair Credit Reporting Act as contained in 15 U.S.C.@ 1681 et seq.

Signed_____   Date_____   S.S.#_____
              Guarantor

Signed_____   Date_____   S.S.#_____
              Guarantor

**UNIFORM STRAIGHT BILL OF LADING**
ORIGINAL - NOT NEGOTIABLE



**Godfrey Trucking Inc.**

6173 West 2100 South • West Valley City, UT 84128 • (801) 972-0600 • Fax (801) 972-0709
"Large Enough to Serve You • Small Enough to Care"

No. 287099

DATE 5/8/17

TO:
CONSIGNEE

SR # 216722

TO #

On COD Shipments the letters "COD" must appear before consignee's name.

STREET
DESTINATION

CITY/ST/ZIP: Las Vegas, NV

FROM:
SHIPPER: Bayshore Moving & Storage
STREET: 1 Corporate Drive
ORIGIN
CITY/ST/ZIP: Hauppauge, NY

SHIPPER'S REFERENCE P.O. NO.

C.O.D. AMT. $ _____  FEE PPD ☐ COLLECT ☐

Is the customer's check acceptable for C.O.D?
If no box checked, the customer's check will not be accepted.
Remit COD to address shown below. Payment must be Cash, Certified or Cashier's Check or Money Order.     YES ☐ NO ☐

Freight Charges are PREPAID unless marked collect.
CHECK BOX IF COLLECT ☐

SPECIAL INSTRUCTIONS:

FOR PAYMENT, SEND BILL TO:
NAME
STREET
CITY/ST/ZIP

| NO. SHIPPING UNITS | H/M | KIND OF PACKAGING, DESCRIPTION OF ARTICLES, SPECIAL MARKS & EXCEPTIONS | WEIGHT (SUBJECT TO CORR.) | CLASS | CHARGES |
|---|---|---|---|---|---|
| | | Store fixtures | | | |
| | | Documented Damages comparing to pre-load. Have pictures after arrival | | | |

SHIPPER LOAD & COUNT  YES ☐ NO ☐   INITIALS

Driver Signature: [signature]
Trailer No. 53883
Seal No.
Date: 5/8/17

SHIPPER NAME: Victor Padilla
CONSIGNEE SIGNATURE: X [signature] 5/8/17
PRINTED LAST NAME

INTERNAL

# HOUSEHOLD GOODS DESCRIPTIVE INVENTORY

**BAY SHORE MOVING & STORAGE, INC.**

Owner's Grade or Rating and Name: AC

| Item No. | CR. REF. | Articles | | | Condition at Origin | Exceptions (if any) at Destination | Item No. |
|---|---|---|---|---|---|---|---|
| 200 | | SM | BOX | PBO | CU | | 1 |
| 1 | | SM | BOX | PBO | CU | | 2 |
| 2 | | SM | BOX | PBO | CU | | 3 |
| 3 | | SM | BOX | PBO | CU | | 4 |
| 4 | | SM | BOX | PBO | CU | | 5 |
| 5 | | SM | BOX | PBO | CU | | 6 |
| 6 | | SM | BOX | PBO | CU | | 7 |
| 7 | | SM | BOX | PBO | CU | | 8 |
| 8 | | SM | BOX | PBO | CU | | 9 |
| 9 | | SM | BOX | PBO | CU | | 0 |
| 210 | | SM | BOX | PBO | CU | | 1 |
| 1 | | SM | BOX | PBO | CU | | 2 |
| 2 | | SM | BOX | PBO | CU | | 3 |
| 3 | | SM | BOX | PBO | CU | | 4 |
| 4 | | SM | BOX | PBO | CU | | 5 |
| 5 | | SM | BOX | PBO | CU | | 6 |
| 6 | | SM | BOX | PBO | CU | | 7 |
| 7 | | SM | BOX | PBO | CU | | 8 |
| 8 | | SM | BOX | PBO | CU | | 9 |
| 9 | | SM | BOX | PBO | CU | | 0 |
| 220 | | Booth Section 8-9-7-12-CH-SC-R | | | | | 1 |
| 1 | | 8-9-SC-G 4-8-12-SC-R | | | | | 2 |
| 2 | | Booth Section 5-9-11-12-4-CH | | | | | 3 |
| 3 | | 9-8-17 CH, 10-5-2-CH, 12-14-CH | | | | | 4 |
| 4 | | Booth Section | | | | | 5 |
| 5 | | Booth Section 4-8-9-12 CH, G, 2-17-V-G-CH | | | | | 6 |
| 6 | | 8-12-4 CH-SC 5-9-2-3-CH-G, 5-9-2-12 SC-R | | | | | 7 |
| 7 | | Flat Piece PBO CU | | | | | 8 |
| 8 | | Flat Piece PBO CU | | | | | 9 |
| 9 | | SM Box PBO CU | | | | | 0 |
| 230 | | Flat Piece PBO CU | | | | | |

**REMARKS/EXCEPTIONS:** nobody was there to sign

**WARNING** — BEFORE SIGNING CHECK SHIPMENT, COUNT ITEMS AND DESCRIBE LOSS OR DAMAGE IN SPACE ON THE RIGHT ABOVE.

TAPE LOT NO. AA 5094
NOS. FROM 201 THRU 230
TAPE COLOR: Green

At Origin — Signature; Date 5-5-17
At Destination — Signature

FORM 1180-S REV. 5/99

**BAY SHORE MOVING & STORAGE, INC.**

| ITEM NO. | CTN NO. | ARTICLES | CONDITION AT ORIGIN | | EXCEPTIONS (IF ANY) AT DESTINATION | ITEM NO. |
|---|---|---|---|---|---|---|
| 23 | 1 | Sm Flat Piece | PAD | C-4 | | 1 |
| | 2 | Sm Flat Piece | PAD | C-4 | | 2 |
| | 3 | Flat Piece | PAD | C-4 | | 3 |
| | 4 | Flat Piece | PAD | C-4 | | 4 |
| | 5 | Flat Piece | PAD | C-4 | | 5 |
| | 6 | Sm bundle | PAD | C-4 | | 6 |
| | 7 | Long bundle | PAD | K-4 | | 7 |
| | 8 | Med bundle | PAD | C-4 | | 8 |
| | 9 | Booth Section 9-11-12-13 CH, 14-5-17-CH | | | | 9 |
| 24 | 0 | 6, 10, 14 - V & SC | | | | 0 |

**REMARKS/EXCEPTIONS:** nobody there to sign

TAPE LOT NO. 11A-94
NOS. FROM 23-1 THRU 24-1

# Godfrey Trucking

6173 West 2100 South
West Valley City, UT 84128
(801) 972-0660
800-444-7668
Fax: 801-908-0767

**NUMBER WHEN REMITTING**
PRO. NO. 216722A

**Shipper:** BAY SHORE STORAGE  BAYHAU
One Corporate Drive
Hauppauge, NY 11788

**Consignee:**
Las Vegas, NV 89101

**Bill To:** ANSON CALDER, LLC  ANSNEW
385 S End Ave 7k
New York, NY 10280

| DATE BILLED | DATE SHIPPED | TRACTOR | TRAILER | DRIVER | TYPE | REFERENCE # | TARIFF | ITEM |
|---|---|---|---|---|---|---|---|---|
| 5/15/2017 | 5/8/2017 | 1132 | 53333 | WEBBR | General Commodities | 216722 | UNKNOWN | UNKNOWN |

| DESCRIPTION | BILLING QUANTITY | RATE | CHARGES |
|---|---|---|---|
| Las Vegas, NV fixtures | | | |
| Freight (flat) | 1 Flat | 4,427.50 Flat | $4,427.50 |
| Fuel Surcharge - Flat | 1 US Dollars | 632.50 Flat | $632.50 |
| O-D/Routed 2570/2570 | | Total | $5,060.00 |

**Remit To:** Godfrey Trucking, Inc.
6173 West 2100 South
West Valley City, UT 84128

Page 1 of 1    **CUSTOMER COPY**